# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

CHRISTOPHER DANIEL )
SCOTT FITTLER, )
 )
　Plaintiff, )
 )
v. )　　　**Case No. CIV-23-237-SM**
 )
MARTIN O'MALLEY, )
Commissioner of Social )
Security,[1] )
 )
　Defendant. )

## MEMORANDUM OPINION AND ORDER

Christopher Daniel Scott Fittler (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. § 405(g). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 8, 9.

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings because the Administrative Law Judge (ALJ) "applied the [in]correct legal standards when assessing the medical opinions of record resulting in a Step Four and Five error." Doc. 12,

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023, and is therefore substituted as Defendant in this suit. *See* Fed. R. Civ. P. 25(d).

at 5. After a careful review of the administrative record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

# I.    Administrative determination.

## A.    Disability standard.

The Social Security Act defines a disabled individual as a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

## B.    Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that

---

[2]      Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 18-19; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity from October 15, 2017, through December 31, 2020, the date his insured status expired;

(2) had the severe impairments of dysfunction of major joints (including right shoulder strain, left lower extremity radiculopathy/neuropathy, right lower extremity radiculopathy/neuropathy, left ankle strain, right knee strain, and degenerative arthritis of the spine), depression, and post-traumatic stress disorder;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residential functional capacity[3] (RFC) to perform light-exertion work with the following mental abilities and limitations: he could understand, remember, and carry out

---

[3] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

simple and detailed instructions, but not complex instructions; he could make judgements on simple and detailed work-related decisions, but not on complex work-related decisions; within this context, he had the concentration, persistence, and pace to focus for normal eight-hour workdays (with normal work breaks that occur about every two hours throughout normal eight-hour workdays) and normal forty-hour workweeks on an ongoing basis; he could interact appropriately with co-workers, supervisors, and the public on a frequent basis; he could respond appropriately to usual work situations and to changes in a routine work setting that was simple or detailed, but not complex;[4]

(5)     could perform jobs that exist in significant numbers in the national economy such as routing clerk, marker, inspector, document preparer, inspector, and order clerk; and so,

(6)     had not been under a disability from October 15, 2017, through December 31, 2020, the date last insured.

*See* AR 19-34.

## 2.    Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

---

[4]     Relying on the SSA's expedited process, the ALJ made no finding about Plaintiff's past relevant work. AR 33.

**II.    Judicial review.**

    **A.    Review standard.**

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938))). The Court "remain[s] mindful that '[e]vidence is not substantial if it is overwhelmed by other evidence in the record.'" *Wall*, 561 F.3d at 1052 (alteration in original) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)).

This Court "consider[s] whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative

agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

### B.  Substantial evidence supports the ALJ's consideration of Plaintiff's irritable bowel syndrome (IBS).

In listing "the ALJ's Specific Errors," Plaintiff argues "the Court must determine whether the ALJ used the correct legal standards and whether the factual findings are supported by substantial evidence in the record." Doc. 12, at 5. Plaintiff appears to raise multiple challenges under this umbrella. *Id.* at 5-15.

He first argues that the ALJ erred in his consideration of state agency medical consultant Dr. Spence's review of the medical records, in part because Dr. Spence's review was based on incomplete evidence. *Id.* at 8-9. To start, these records spanned only until June 2020. So, Dr. Spence's assessment of a

light RFC stemmed from the information available at the time. Dr. Spence also noted that Plaintiff's assessment could range to less than sedentary given unknown other details. *Id.* at 9 (citing AR 73). Plaintiff suggests that Dr. Spence's "assessment failed to consider [his] inflammatory bowel disease" (IBD), which had caused a collapse and telescoping of his bowel and subsequent hospitalizations after June 2020. *Id.* at 10; Doc. 19, at 5-6. He also challenges the ALJ's finding that Dr. Spence's assessment was consistent and persuasive, given that it was an incomplete review of the medical evidence. Doc. 12, at 10.

The ALJ must consider all of a claimant's impairments—both severe and non-severe—singly and in combination, when formulating a claimant's RFC. *See, e.g.*, *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]t step two, the ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to survive step two." (alternations omitted) (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) (quoting 20 C.F.R. § 404.1523))); *see also Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'")).

Plaintiff argues that at step four the ALJ "did not properly evaluate the symptoms and limitations that flowed from the known and assigned medically determinable impairments," namely those flowing from his *C. difficile* and IBD to the impairment of IBS. Doc. 19, at 5; *see also* Doc. 12, at 11. He also unsuccessfully argues that the ALJ improperly picked and chose certain evidence while glossing over his "frequent hospitalizations," objective imaging, and "well-documented IBD." Doc. 12, at 12.

Plaintiff "bears the burden of establishing a disability." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985); *see Zavala v. Kijakazi*, No. CIV-20-1139-STE, 2021 WL 6051107, at *4 (W.D. Okla. Dec. 21, 2021) ("[E]ven when an ALJ disregards nonsevere impairments when assessing a claimant's RFC, such an error does not necessarily warrant remand if the evidence in the case does not support a finding of functional limitations from the non-severe impairments." (citing *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013))). Plaintiff has not met his burden.

First, Dr. Spence did consider Plaintiff's IBD. As the Commissioner points out, Plaintiff stated he had received an IBS diagnosis in 2018, and Dr. Spence considered those medical records. Doc. 18, at 6-7. The ALJ found Plaintiff's gastroenteritis and IBS to be non-severe impairments. AR 21. And, as the Commissioner argues, "at no time before the agency, in any function

report, disability report, or even [at his counseled ALJ hearing], did Plaintiff assert that his IBS limited him." Doc. 18, at 7. Here, Plaintiff maintains that no reviewing physician had the benefit of the updated records from later in 2020, so "the ALJ's [] finding it a non-severe impairment does not salvage" his decision. Doc. 12, at 10.

But the ALJ detailed Plaintiff's December 2019 report, which explained he could not work due to mental limitations and joint-related complaints. AR 24-26. The ALJ considered Plaintiff's attorney's May 2020 submission that Plaintiff's debilitating conditions were his mental health limitations and musculoskeletal problems—not his gastrointestinal issues. The ALJ also outlined Plaintiff's May 2021 submissions and his hearing statements, which largely focused on mental health impairments and major joint dysfunction, without reference to gastrointestinal issues. *Id.* at 26-27.

The ALJ also considered all the medical evidence and acknowledged the Veterans Affairs (VA) records noting IBS. *Id.* at 28-31. And he referenced (although briefly) Plaintiff's IBS in determining Plaintiff's RFC. AR 28; *see Sadongei v. Colvin*, 2017 WL 74283, at *3 (W.D. Okla. Jan. 6, 2017) ("Clearly, while the discussion was brief, the ALJ considered Plaintiff's mental impairments in making an RFC determination and did not rely on the step-two assessment in place of an RFC analysis." (citing *Suttles v. Colvin*, 543 F.

App'x. 824, 826 (10th Cir. 2013), as "determining proper RFC assessment where ALJ discussed evidence relating to plaintiff's non-severe mental impairment and, '[s]ignificantly, the ALJ did not make any ancillary statement, like that made by the ALJ in *Wells*, affirmatively suggesting an improper conflation of the step-two and step-four assessments'")).

Plaintiff bears the burden of proving that he had functional limitations that should be part of his RFC. *See* 20 C.F.R. § 404.1512(a). Beyond arguing he cannot stand and walk for six hours a day given the extent of his symptoms, Plaintiff has not explained how his IBS required further limitations. The ALJ did not have to impose any greater limitations in the RFC assessment unless the record supported those limitations.

Plaintiff also curtly assails the ALJ's discounting his subjective complaints. Doc. 12, at 11-12, 15. But the ALJ supported his consistency findings by pointing to Plaintiff's noncompliance with treatment, his ability to care for two young children, his ongoing work activities, and his "fairly unremarkable mental health and physical exam findings." AR 33.

The ALJ properly considered the record and fulfilled his duty to consider Plaintiff's IBS. Substantial evidence supports the ALJ's RFC assessment related to Plaintiff's IBS. This Court will not reweigh the evidence and therefore finds no error in the ALJ's decision. *See Garrison v. Colvin*, 564 F.

App'x 374, 378 (10th Cir. 2014) ("The ALJ's discussion of the evidence and his reasons for his conclusions demonstrate that he considered all of [Plaintiff's] impairments," and the "limited scope of review precludes this court from reweighing the evidence or substituting [its] judgment for that of the [Commissioner]." (internal quotation omitted)).

### C. Substantial evidence supports the ALJ's assessment of Plaintiff's mental health limitations.

As to Plaintiff's mental health limitations, the state agency physicians could not provide any assessments due to insufficient evidence in the record. AR 20-21. The physicians documented several unsuccessful attempts to contact Plaintiff and his third-party contact via telephone and mail. *Id.* at 20. That said, the ALJ independently assessed the "paragraph B" criteria, reviewing "new evidence submitted for the first time on appeal at the Administrative Law Judge level of appeal." *Id.* at 21. In that review, the ALJ concluded Plaintiff's mental impairments were severe because they significantly limited his ability to perform basic work activities. *Id.*

The ALJ found moderate limitations in each of the "paragraph B" criteria. *Id.* at 22. He detailed Plaintiff's mental health complaints of panic attacks, anxiety, and PTSD, among others. *Id.* at 24-28. He noted Plaintiff's complaints that being around the general public induced severe anxiety and paranoia. *Id.* at 24, 26. The ALJ noted Plaintiff's alleged difficulties following

complicated instructions and paying attention. *Id.* at 25. The ALJ recognized records dating back to 2016 listing Plaintiff's complaints of "a long history of panic attacks." *Id.* at 29. The ALJ reviewed Plaintiff's engagement with mental health services and noted he practiced elements of mindfulness, which in April 2018 were helping his symptoms. *Id.* at 30. In October 2019, Plaintiff reported he had stopped taking gabapentin a year earlier as he did not feel it was helping. *Id.* He reported anxiety as his most significant issue. *Id.* At a November 2019 psychological intake, Plaintiff reported he took medication for a month but stopped as he did not feel it was effective. *Id.* The ALJ noted Plaintiff had been receiving outpatient treatment. *Id.*

The ALJ observed that Plaintiff lived with his girlfriend and her two children and was independent in his activities of daily living. *Id.* He managed his finances and pays his bills. He sometimes took day trips, shopped in stores, and made good eye contact. *Id.* at 22. Plaintiff agreed to participate in individual therapy. During a therapy appointment, Plaintiff reported to being a stay-at-home father to two young boys, one of whom was autistic. *Id.* at 30. Plaintiff was assessed with anxiety disorder and PTSD. *Id.*

The ALJ noted that Plaintiff gets the boys ready for and drives them to school, showing an ability to complete tasks and "an awareness of normal hazards." *Id.* at 22. "[F]rom June 2018 through the present," Plaintiff worked

part-time in food delivery, showing an ability to concentrate, persist, or maintain pace, as well as an ability to understand, remember, or apply information. *Id.* The ALJ concluded Plaintiff can set realistic goals, make plans independently of others, and maintain personal hygiene and attire appropriate to a work setting. *Id.*

To the extent that Plaintiff maintains the ALJ "failed to . . . elaborate as to how an individual with frequent panic attacks would have the persistence to persist with detailed tasks," the Court first notes that none of the jobs the ALJ identified are for semi-skilled work. *See* Doc. 12, at 15. The ALJ determined Plaintiff had the RFC to carry out simple and detailed instructions, but not complex instructions. AR 23. The ALJ considered Plaintiff's "fairly unremarkable" medical evidence and yet imposed significant non-exertional restrictions. The ALJ noted Plaintiff's mindfulness practice; his ability to care for others; and his integrity, kindness, social intelligence, and independence in his activities of daily living. *Id.* at 30. The ALJ also noted Plaintiff's congruent mood and affect. *Id.* Substantial evidence supports the ALJ's conclusion.

And as much as Plaintiff challenges his ability to engage with the public and coworkers due to PTSD, panic attacks, and anxiety, the jobs of marker (DICOT 209.587-034, 1991 WL 671802, 132,000 jobs in the national economy), routing clerk (DICOT 222.687-022, 1991 WL 672123, 118,000 jobs in the

national economy), and inspector (DICOT 559.687-074, 1991 WL 683797, 35,00 jobs in the national economy), all involve a "people" rating of eight. The "people" rating is graded on a scale of zero to eight, with eight being the "lowest possible level of human interaction that exists in the labor force." *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016). A people rating of eight—defined as "Taking Instructions-Helping"—is also explained as: "Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." DICOT, App. B, 1991 WL 688701.

Those three jobs also require only a reasoning level of two. A fourth job, inspector (sedentary) (DICOT 669.687-014, 1991 WL 686074, 25,000 jobs in the national economy), has a reasoning level of one and a "people" rating of eight. To the extent Plaintiff argues that two of the jobs the ALJ identified have reasoning levels of three, Doc. 19, at 8, any error was harmless. Given the reasoning level of two for three of the jobs and the large numbers of those jobs available in the national economy, the Court determines that even if the ALJ erred, such error was harmless. *See Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (concluding that any error on whether claimant could perform jobs was harmless error because "even if [the court] consider[ed] only these two jobs out of the four considered by the ALJ, there were still 11,000 jobs available

14

regionally and 152,000 jobs available nationally" which the claimant could perform).

### D.   The ALJ considered the VA ratings.

Because Plaintiff filed for Disability Insurance Benefits in November 2019, the ALJ properly applied a new set of regulations for evaluating medical opinions and other medical evidence. These rules differ substantially from both prior regulations and prior agency policy. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). As relevant here, the new regulations significantly alter the way the agency considers medical opinion evidence, 20 C.F.R. § 404.1520c, and disability decisions by other governmental agencies, 20 C.F.R. § 404.1504. A VA rating decision is "inherently neither valuable nor persuasive" and thus is not evidence that could support a disability finding under the Social Security Act. 82 Fed. Reg. at 5849(c)(1). So for applications filed on or after March 27, 2017, the ALJ need not provide any analysis of a VA rating decision. 20 C.F.R. § 404.1504. The Social Security Administration will, however, consider "all of the supporting evidence underlying the other governmental agency['s] . . . decision that we receive as evidence in your claim in accordance with [20 C.F.R.] § 404.1513(a)(1) through (4)." *Id.*

Plaintiff acknowledges that a decision by another governmental agency is not binding on the Commissioner but maintains that as the only assessment of his mental limitations, it should have been assessed for supportability and consistency. Doc. 12, at 12, 14. However, the ALJ observed that VA ratings are based on VA rules, are not binding on the Social Security Administration, but were still considered in the RFC assessment. AR 33. The ALJ thus considered the VA rating decision but did not analyze it, also considering the "evidence underlying" the VA rating decision. *See* 20 C.F.R. § 404.1504.

There is a "difference between what an ALJ must consider as opposed to what he must explain in the decision." *Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012). Although he need only consider the underlying evidence, the ALJ explicitly discussed Plaintiff's mental health treatment at the VA, including his diagnosis of PTSD. AR 28; *see* 20 C.F.R. § 404.1504 ("[W]e will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim . . . ."). The ALJ thoroughly reviewed Plaintiff's mental health history, stemming largely from VA reports. No further analysis was required under 20 C.F.R. § 404.1504.

## III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 17th day of January, 2024.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE